UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GREGORY HOWARD REAGAN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-1823 |
| | § | |
| PIPING TECHNOLOGY & PRODUCTS INC, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Pro se plaintiff Gregory Howard Reagan brought this lawsuit against his former employer, Piping Technology & Products ("Piping Tech"),[1] alleging race-based disparate treatment, retaliation and hostile work environment claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq* ("Title VII"), and 42 U.S.C. §§ 1981 and 1983. Pending before the Court is the defendant's motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure (Docket No. 57). The plaintiff has not filed a response and the time for doing so has expired. Having reviewed the defendant's motion and accompanying exhibits, the record, the undisputed facts and the applicable law, the Court determines that the defendant's motion should be GRANTED in its entirety.

**II.   FACTUAL BACKGROUND**

Piping Tech is a pipe manufacturing company that employs over 500 individuals. Reagan, who is Caucasian, was hired by the company as a cut saw operator on February 18, 2011. As a new hiree, Reagan received extensive training concerning workplace safety and

---

[1] The Court *sua sponte* dismissed the individual defendants in an order dated October 30, 2013 (Docket No. 53).

personal conduct. He acknowledged receipt of this training by completing and signing a comprehensive orientation review form. The form requires a new employee to note his or her understanding and/or review of specific duties and policies. Among other things, Reagan initialed the policy that prohibits "horseplay." He also signed a form affirming receipt of the company rules and its disciplinary policy. The rules prohibit, *inter alia*, disorderly behavior and missing a scheduled day of work without notifying a supervisor.

During his employment, Reagan received three reprimands for objectionable conduct. The first reprimand, delivered by fabrications supervisor Jim Lewis, was an oral warning for defacing a company machine.[2] Reagan apparently received no additional punishment for this offense. The second, issued on July 27, 2011, was a written reprimand for breaking a fan switch during what his immediate supervisor, Alvin "J.J." Tyler, characterized as horseplay. Tyler, an African American, noted that although Reagan was a good worker, his conduct could not be tolerated.[3] Reagan hand-wrote "no comment" in the space reserved for employee comment and dated his note "7-27-11." Reagan received a one-day suspension for the violation, effective July 28.

Reagan claims, without elaborating, that July 27, 2011 was also the approximate day he reported to Mervin Lauer, Piping Tech's Safety and Human Resources Manager, that Tyler told him, "Don't plop your big white ass in her [another employee's] chair." Lauer acknowledges receiving this complaint as well as subsequent complaints from Reagan that Tyler was harassing him by repeatedly threatening him with termination and monitoring his restroom and water breaks. Tyler denied the allegations when confronted. Reagan claims that he warned Lauer that

---

[2] The warning was referenced in a reprimand letter dated September 15, 2011 for a different offense.

[3] Although a supervisor, Tyler did not have unilateral authority to terminate the employment of another employee and typically needed approval to discipline another employee.

he would file a complaint with the U.S. Equal Employment Commission ("EEOC") if the matter was not resolved immediately.

On September 15, 2011, Reagan received his third reprimand, from Tyler, for defacing company property. Specifically, Tyler cited Reagan for writing "he is gay" on the back of a chair used by one of his co-workers. When the matter was investigated, saw operator Mary Burleigh came forward as an eyewitness to the incident and wrote a statement recording her observations. Based on the investigation and Tyler's recommendation, Reagan was suspended for three days without pay, from September 20th until September 22nd.

On September 22nd, Reagan filed a complaint with the EEOC alleging that he was the victim of racially discriminatory and retaliatory employment practices. He reported that Tyler, his African American supervisor, uttered a "racial slur" to him and wrongfully punished him for breaking a company fan that was not actually broken. Reagan also took issue with the reprimand letter Tyler issued for defacing a co-worker's chair, a violation he believed was based on trumped-up allegations. Reagan further reported that Tyler repeatedly threatened to terminate him, monitored his trips to the bathroom and water fountain, and on one occasion withheld work from him and gave it to another operator.

Reagan returned to work after his suspension and continued working for Piping Tech until December 1, 2011. The parties dispute the circumstances that gave rise to his departure. According to Reagan, he resigned from Piping Tech after lodging a host of additional, unresolved complaints with the company's human resources department. According to the defendant, however, Reagan was terminated after failing to report to work upon the expiration of a four-week leave of absence he had been granted to care for his ailing mother.

In a letter dated and mailed on March 20, 2013, the EEOC dismissed Reagan's complaint, concluding that evidence did not exist to establish a discrimination claim. Thereafter, on June 21, 2013, Reagan filed the instant lawsuit alleging several causes of action for employment discrimination. He claims that he was treated less favorably than his African American and Hispanic co-workers because of his race. He also claims that he was subjected to repeated harassment—construed by this Court as a hostile work environment—on account of race. He further alleges that the defendant retaliated against him for reporting Tyler's purportedly racist comment to human resources, and for filing a complaint with the U.S. Department of Labor's Occupational Safety and Health Administration ("OSHA") shortly after being hired.[4] According to the plaintiff, he was reprimanded and suspended without pay for reporting these practices.[5] He seeks declaratory and injunctive relief, as well as an order to expunge his employment record of improper disciplinary action taken against him and compensatory damages for the emotional and mental anguish he has suffered. The defendant now moves for summary judgment.

### III.   CONTENTIONS OF THE PARTIES

Piping Tech contends that summary judgment should be granted in its favor because the undisputed facts fail to give rise to the various employment discrimination claims raised by this suit. In its view, Reagan has failed to establish race discrimination under Title VII because

---

[4] Reagan alleges that sometime during the second quarter of 2011 he filed a confidential OSHA complaint to report dangerous workplace conditions at Piping Tech. He claims that Tyler confronted him about the complaint and that he (Reagan) admitted to filing it. Reagan further claims, without elaborating, that Piping Tech took "swift and harsh" action against him. The defendant, through its principals, states that the plaintiff's alleged OSHA complaint was unknown by the company until the principals were served with papers for the instant lawsuit that contained an undated, redacted copy of the complaint. Moreover, Lauer avers that in June 2011, a different employee admitted to filing an OSHA complaint against the company. That employee, according to Lauer, continues to be employed at Piping Tech.

[5] Although, in his EEOC complaint, Reagan alleges that Tyler once withheld work from him because of his race, he does not refer to that incident as a factual basis for the pending civil complaint.

Reagan is not a member of a protected class, Piping Tech took no adverse employment action against him, and evidence is lacking to show that he was treated differently than other similarly-situated, non-white employees. In any event, it contends, any adverse action taken against Reagan was lawful because it was based on a violation of the company rules. Piping Tech also argues that the portion of Reagan's retaliation claim arising from his alleged OSHA complaint amounts to a non-cognizable private cause of action under section 11(c) of OSHA, 29 U.S.C. § 660(c). The defendant supports all of these contentions with affidavits by Mervin Lauer, manufacturing director Rick Moreau, and Piping Tech Vice President Randy Bailey; a copy of the company rules, disciplinary policy and orientation review form executed by Reagan; and reprimand letters from the plaintiff's personnel file.

Reagan has not responded to the defendant's motion. According to this Court's local rules, responses to motions are due within 21 days unless the time is extended. S.D. Tex. L.R. 7.3. A failure to respond is "taken as a representation of no opposition." S.D. Tex. L.R. 7.4. Notwithstanding this failure, summary judgment may not be awarded by default. *See Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (quoting *Hibernia Nat'l Bank*, 776 F.2d at 1279). To this end the defendant, as the movant, "has the burden of establishing that there is no genuine dispute of material fact; and, unless [it] does so, a court may not grant the motion, regardless whether any response is filed." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 550 (5th Cir. 2012). Nevertheless, in determining whether summary judgment is appropriate, the Court may accept as undisputed the facts set forth in the motion. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). In this case,

the Court also considers the amended complaint and accompanying exhibits to assess the viability of the plaintiff's claims.

## IV. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of an element essential to that party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing [the Court] of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323; *see Martinez v. Schlumber*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any declarations show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **FED. R. CIV.** P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex*, *Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal

quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

**V. ANALYSIS AND DISCUSSION**

Reagan has filed his disparate treatment, retaliation and hostile work environment claims pursuant to Title VII, and 42 U.S.C. §§ 1981 and 1983. Title VII forbids an employer from

"discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Although Reagan cites §§ 1981 and 1983 as independent bases for his suit, the Court will not separately consider these claims since they are used as parallel causes of action with Title VII, requiring the same proof to show liability. *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 403 n.2 (5th Cir. 1999); *see Pegram v. Honeywell, Inc.,* 361 F.3d 272, 281 n.7 (5th Cir. 2004) ("[R]ace discrimination claims brought pursuant to section 1981 are governed by the same evidentiary framework applicable to employment discrimination claims under Title VII."); *Bunch v. Bullard*, 795 F.2d 384, 387 n.1 (5th Cir. 1986) (separate consideration not given to §§ 1981 and 1983 claims parallel with Title VII). The summary judgment analysis is the same for each functionally identical cause of action.

### A. Race-Based Disparate Treatment Claims

Reagan's disparate treatment claims arise from his general and unsubstantiated assertion that "[n]o similarly-situated Black or Hispanic employees were treated in the manner that [the defendant] treated [him]." In employment discrimination cases like the pending one, discrimination under Title VII may be proven through either direct or circumstantial evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.,* 333 F.3d 572, 578 (5th Cir. 2003)). The Fifth Circuit has held that in cases where the plaintiff produces no direct evidence[6] of discriminatory intent, a court must evaluate proof of circumstantial evidence using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Alvarado v. Texas Rangers*, 492 F.3d 605,

---

[6] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *See Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)).

611 (5th Cir. 2007) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001)); *Turner*, 476 F.3d at 345 (citing *Rutherford v. Harris Cnty.*, 197 F.3d 173, 179-80 (5th Cir. 1999)).

> Employing that framework, the Fifth Circuit has stated:
>
> [A] plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment. If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another motivating factor is the plaintiff's protected characteristic.

*Alvarado*, 492 F.3d at 611 (emphasis, citations and internal quotation marks omitted); *see also Turner*, 476 F.3d at 345 (internal citations omitted); *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (internal citations omitted). "Although intermediate evidentiary burdens shift back and forth under [the *McDonnell Douglas*] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "[A] plaintiff can avoid summary judgment if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer and (2) creates a reasonable inference that race was a determinative factor in the actions of which plaintiff complains." *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 141 (5th Cir. 1996) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 450 (5th Cir. 1996); *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996) (overruled on other grounds)).

Reagan's disparate treatment allegations fail to create the required presumption of intentional discrimination needed to prevail under Title VII. To establish a prima facie case, a plaintiff must demonstrate that "(1) [he or] she belongs to a protected group, (2) [he or] she was qualified for [his or] her position, (3) [he or] she suffered an adverse employment action; and (4) [he or] she was replaced with a similarly qualified person who was not a member of [his or] her protected group, or in the case of disparate treatment, that similarly situated employees were treated more favorably." *E.g.*, *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 593 (5th Cir. 2007).

The question whether Reagan has presented a *prima facie* case of racial discrimination turns on whether he can identify as a comparator any non-white employee who was similarly situated to him. The most critical aspect of this fourth element is that

> the plaintiff's conduct that drew the adverse employment decision [be] nearly identical to that of [a] proffered comparator who allegedly drew dissimilar employment decisions. If the difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Lee v. Kansas City Southern Ry. Co.,* 574 F.3d 253, 260 (5th Cir. 2009) (internal quotation marks omitted). Instances when employment actions may be deemed to have been taken under nearly identical circumstances include "when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* (citing *Wallace,* 271 F.3d at 221-22; *Barnes v. Yellow Freight Sys., Inc.,* 778 F.2d 1096, 1101 (5th Cir. 1985); *Okoye v. Univ. of Tex. Houston Health Sci.,* 245 F.3d 507, 514 (5th Cir. 2001)).

Although Reagan makes the general allegation that he was treated less favorably than his African American and Hispanic peers, the amended complaint does not identify any employee

who received preferential treatment under any comparable circumstance facing him.  Without corroborating facts, Reagan cannot establish a jury issue for trial, even though he is a pro se litigant whose submissions are liberally construed.  It is well settled that "[c]ourts construe pleadings filed by pro se litigants under a less stringent standard than those filed by attorneys."  *White v. Briones,* No. H–09–2734, 2011 WL 66134, at *3 (S.D. Tex. Jan. 7, 2011) (Rosenthal, J.) (citing *Haines v. Kerner,* 404 U.S. 519 (1972)).  Yet, even a pro se litigant must "make arguments capable of withstanding summary judgment."  *Id.* (quoting *Ogbodiegwu v. Wackenhut Corr. Corp.,* 202 F.3d 265 (5th Cir. 1999)) (per curium) (unpublished table opinion).

On the record before the Court, it is impossible for Reagan to establish a prima facie claim of race discrimination.  Accordingly, the defendant is entitled to summary judgment on all of the plaintiff's disparate treatment claims.[7]

### B.     Retaliation Claims

A liberal reading of Reagan's amended complaint indicates that he believes that the reprimands and suspensions (without pay) he received were retaliatory.  Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against" an employee for opposing an unlawful practice or asserting a charge, testifying, assisting, or participating in a Title VII proceeding or investigation.  *Burlington Northern & Sante Fe Railway Co. v. White,* 548 U.S. 53, 59 (2006) (citing 42 U.S.C. § 2000e–3(a)); *see Fabela v. Socorro Indep. Sch. Dist.,* 329 F.3d 409, 414 (5th Cir. 2003).  To establish a prima facie claim of retaliation in this context, Reagan must illustrate that: "(1) [he] engaged in a protected activity; (2) an adverse

---

[7] Having found that Reagan has not sufficiently established his race discrimination claim, the Court need not discuss the issue of pretext.  The Court notes, however, that the record clearly demonstrates that Piping Tech had a legitimate, nondiscriminatory reason for suspending him without pay—to wit, breaking and defacing company property during perceived horseplay.  The record is devoid of evidence creating a genuine fact issue as to the truth of Piping Tech's proffered reason for punishing him.  Although "[a] plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence,'" Reagan has not made that showing here.  *Laxton*, 333 F.3d at 578 (quoting *Wallace*, 271 F.3d at 220; *Reeves*, 530 U.S. at 143).

employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Turner*, 476 F.3d at 348 (citing *Fabela*, 329 F.3d at 414). "The burden-shifting structure applicable to Title VII disparate treatment cases, as set forth in [*McDonnell Douglas*], is applicable to Title VII unlawful retaliation cases." *Haynes v. Pennzoil Co.,* 207 F.3d 296, 299 (5th Cir. 2000).

The dispositive issue here is whether Reagan can establish a causal link between the report he made about Tyler's alleged racist remark and the discipline he received, assuming the terms of his punishment constituted adverse employment action within the meaning of Title VII's anti-retaliation provision. Reagan alleges that Tyler, his African American supervisor, told him not to "plop your big white ass" in another employee's chair. The parties do not dispute that Reagan reported this remark to human resources. The record, however, does not contain any evidence to show that the reprimands and accompanying suspensions—the only arguably adverse actions Reagan claims to have faced—had any causal connection to Tyler's comment.[8]

Reagan appears to raise an additional claim of retaliation that implicates section 11(c) of OSHA. This claim is not viable on its face, however, because "there is no private cause of action under federal law for a private employer's retaliatory discharge of an employee contrary to section 11(c)." *George v. Aztec Rental Ctr. Inc.*, 763 F.2d 184, 185-86 (5th Cir. 1985); *see also Cuyahoga Valley Ry. Co. v. United Transp. Union*, 474 U.S. 3, 6 (1985) ("enforcement of [OSHA] is the sole responsibility of the Secretary [of Labor]").[9] Moreover, the plaintiff does not even claim that he was fired from Piping Tech, a requirement for triggering the statute.

---

[8] The Court reiterates its observations *supra* note 7 with respect to a showing of pretext. The record contains no evidence that creates a jury question regarding the credibility of Piping Tech's proffered reason for disciplining Reagan.

[9] Section 11(c) provides:

For these reasons, summary judgment for the defendant is granted with respect to all of Reagan's retaliation claims.

### C. Hostile Work Environment Claims

Summary judgment for the defendant must also be granted vis-à-vis Reagan's claims that he was subjected to a hostile work environment. A work environment is hostile when it "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 78 (1998) (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993)). To prevail, Reagan is required to show that he: "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Hernandez v. Yello Transp., Inc.,* 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir. 2002)).

---

(c)(1) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

(2) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

(3) Within 90 days of the receipt of a complaint filed under this subsection the Secretary shall notify the complainant of his determination under paragraph (2) of this subsection.

Reagan's workplace environment must have been "both objectively and subjectively offensive"—i.e., "one that a reasonable person would find hostile or abusive, and one that [he] in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998). To make this determination, a court must assess the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 787–88 (quoting *Harris,* 510 U.S. at 23).

Tyler's alleged racist remark to Reagan is essentially cited as the catalyst for the hostile work environment at issue in this case. For comments in the workplace to provide sufficient evidence of discrimination, however, they must be

> 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue. Comments that do not meet these criteria are considered stray remarks, and standing alone, are insufficient to defeat summary judgment.

*Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (citations and internal quotation marks omitted). Assuming, *arguendo*, that Tyler made the alleged remark, read in a light most favorable to Reagan, this single comment, even if offensive, constitutes nothing more than an isolated, stray remark. *Id.*; *see Faragher*, 524 U.S. at 788 ("offhand comments[ ] and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment.'"). On the present record, no reasonable factfinder could conclude that Tyler's remark was so frequent or so severe to interfere with Reagan's work performance or otherwise alter the terms of his employment. *See Faragher*, 524 U.S. at 787-88. Without additional proof, Reagan cannot meet his summary judgment burden.

To the extent that Reagan believes that a hostile work environment was created by Tyler's purported threats to terminate him and efforts in monitoring his whereabouts after the first suspension, these claims are unavailing. Apart from Regan's own self-serving allegations and assuming that Tyler actually treated him in this manner, nothing in the record establishes a causal connection between Tyler's conduct and Reagan's race. Reagan's hostile work environment claims, therefore, cannot withstand summary judgment.

## VI.   CONCLUSION

Based on the foregoing analysis and discussion, the defendant's motion for summary judgment is GRANTED in its entirety.

It is so **ORDERED.**

SIGNED on this 2nd day of October, 2014.

_____
Kenneth M. Hoyt
United States District Judge